Filed 5/22/25  P. v. Rodriguez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOVANY RODRIGUEZ,<br><br>    Defendant and Appellant. | B336343<br><br>(Los Angeles County<br> Super. Ct. No. BA298155) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Jovany Rodriguez (Rodriguez) was convicted of murder and attempted murder in 2010. Rodriguez twice petitioned for resentencing under former Penal Code section 1170.95,[1] which has since been renumbered as section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) The trial court denied the first petition in 2020, and the second in 2023. The present appeal is from the second denial. We conclude Rodriguez is ineligible for relief under section 1172.6 and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of January 7, 2006, two cars pulled up next to each other at an intersection in Los Angeles. One was a white sport utility vehicle, occupied by Miguel Padilla (Padilla), Patricia Quiroa (Quiroa), and Denise Rivera. The other was a gray car with tinted windows, occupied by three individuals and positioned on the passenger side of the white vehicle. Someone from the gray car fired a gun at the white car, killing Padilla and wounding Quiroa.

Testimony from Quiroa and a ballistics expert established that bullets traveled from the driver's side of the gray car through the front passenger window of the white car; four casings were found, and one bullet was recovered from the passenger door of the white car. Quiroa identified Eric Rosas as the shooter. Another witness, Vanessa Vallejo, said the occupants of the gray car were William Rosas (a cousin of Eric Rosas), Michael Garcia (Garcia), and Rodriguez.

---

[1] All future statutory references are to the Penal Code, unless otherwise stated.

2

Almost a week later, on the evening of January 13, 2006, Linda Arvizu (Arvizu) and Gabriel Martinez Manzo (Manzo) were at their home on 48th Street in Los Angeles. Arvizu spotted Garcia hiding in the back yard. Manzo and Arvizu pushed Garcia out of their yard toward the street. They heard Garcia tell a second person, who was standing in the street, to shoot them. This second person told Arvizu to take Manzo inside or Manzo would be shot. The person then fired his gun multiple times, hitting Manzo's pants but missing his body. Arvizu and Manzo both later identified Rodriguez as the shooter. A ballistics expert testified the same gun was used in both incidents.

William Rosas, Garcia, and Rodriguez were charged together, but the charges against Rodriguez were severed and tried separately. A jury convicted Rodriguez of the murder of Padilla (§ 187, subd. (a)) and attempted murder of Quiroa (§§ 664/187, subd. (a)), as well as premeditated attempted murder of Manzo (§§ 664/187, subd. (a)).[2] The trial court sentenced Rodriguez to three consecutive terms of 25 years to life. This court affirmed that result.[3]

In January 2020, Rodriguez petitioned the trial court for relief under former section 1170.95. He argued he was not the actual killer or a major participant in the murder of Padilla. The trial court denied the petition in February 2020, observing that the jury was not instructed on either felony murder or the natural and probable consequences doctrine. No appeal was taken from that ruling.

---

[2] The jury also found true a series of enhancements.

[3] The prior panel modified the abstract of judgment to properly reflect Rodriguez's custody credit and the term for one of the enhancements, and to correct a clerical error.

3

In October 2022, Rodriguez filed another petition for resentencing under former section 1170.95. The trial court appointed counsel and solicited briefing. The District Attorney filed a response opposing the petition, and after obtaining the trial transcripts, Rodriguez's counsel elected not to file a reply. In November 2023, the trial court held the required hearing under section 1172.6, subdivision (c), and determined Rodriguez had not made a prima facie case for relief. The court ruled that the jury had not been given any implied malice instructions, only instructions on direct aiding and abetting and express malice, therefore Rodriguez was not eligible for resentencing.

Rodriguez timely appealed.

## DISCUSSION

### I. *Governing Law*

In 2019, the legislature updated the murder statutes to limit vicarious liability for that offense. (Stats. 2018, ch. 1015, §§ 1-3; see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) The legislature also provided a procedure for defendants to request resentencing if they had been convicted under previous versions of the law. (Stats. 2018, ch. 1015, § 4; see *Lewis, supra,* 11 Cal.5th at p. 959.) These changes were later expanded to cover convictions for attempted murder as well. (Stats. 2021, ch. 551.)

A person convicted of murder is eligible for resentencing if they were convicted of felony murder, or under the natural and probable consequences doctrine, or on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) However, a person convicted of attempted murder is only eligible for resentencing if they were convicted under the natural and probable

4

consequences doctrine.  (*Ibid*.; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.)

"[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted." (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*).)  A prosecution under that doctrine must show the defendant aided and abetted one crime, which foreseeably led to another.  (*Id.* at pp. 843–844.)

In the context of murder, a petition seeking resentencing under section 1172.6 must demonstrate (1) that the charging document filed against the defendant "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," (2) that the petitioner was either convicted of murder or accepted a plea offer in lieu of a trial where they could have been convicted of murder, and (3) that the petitioner could not presently be convicted of murder due to the changes in section 188 or 189.  (§ 1172.6, subd. (a).)

In the context of attempted murder, a petition seeking resentencing under section 1172.6 must demonstrate (1) that the charging document filed against the defendant permitted the prosecution to proceed under the natural and probable consequences doctrine, (2) that the petitioner was convicted of attempted murder, and (3) that the petitioner could not presently be convicted of attempted murder due to the changes in section 188 or 189.  (§ 1172.6, subd. (a).)

Upon receipt of a facially compliant petition, the trial court must hold a hearing "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) The court may examine the record of conviction in determining whether the showing has been made, but must accept the petitioner's allegations as true unless the court's own documents contain facts refuting those allegations. (*Lewis, supra,* 11 Cal.5th at p. 971.)

We review the trial court's inquiry de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II.     *Analysis*

Nothing in the record suggests, and Rodriguez does not argue, that his prosecution proceeded expressly under the felony murder or natural and probable consequences doctrines. No jury instructions were given on either doctrine. Instead, Rodriguez contends the presence of a "kill zone" instruction, combined with the aiding and abetting instructions, permitted the jury to impute the principal shooter's intent to Rodriguez. We are not persuaded.

## A.     *Instructions*

The instructions relevant here were given to the jury in the following sequence. First, the court defined the term "principals": "[p]ersons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." Next, the court described aiding and abetting: "[a] person aids and abets the commission of a crime when he or she: [¶] (1)

6

[w]ith knowledge of the unlawful purpose of the perpetrator, and [¶] (2) [w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime, and (3) [b]y act or advice aids, promotes, encourages or instigates the commission of the crime."

The instructions told the jury both murder and attempted murder required a finding of malice, and defined malice as "either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being." Then came the "kill zone" instruction: "[a] person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. This zone of risk is termed the 'kill zone.' The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a zone of risk is an issue to be decided by you."

### B. *Application*

Rodriguez argues the jury could have found he intended to aid and abet an attempt to kill someone, is therefore a principal "equally guilty" with the original perpetrator, and is thus responsible for the perpetrator's concurrent intent to kill the other victims in the "kill zone," even if Rodriguez himself did not intend to kill those other victims. In other words, the jury might have found Rodriguez intended the death of only one victim, then held him responsible for the actual shooter's method of killing.

This argument is not convincing for the reasons given below, but even if it were, it would only apply to Rodriguez's murder conviction.[4]  As noted above, section 1172.6 applies to attempted murder convictions only where they were secured under the natural and probable consequences doctrine. Rodriguez argues that inferring concurrent intent from a kill zone instruction is substantially the same as applying the natural and probable consequences doctrine.  It is not.  The natural and probable consequences doctrine applies if the accomplice intends to aid and abet one crime, the target offense, which foreseeably leads to another crime.  (*Gentile, supra,* 10 Cal.5th at pp. 843–844.)  Rodriguez describes a situation where the accomplice intends to aid and abet the crime committed but does not anticipate the method by which it was carried out.

More fundamentally, the jury instructions do not permit the line of thinking Rodriguez suggests.  The jury was given two categories into which Rodriguez could fall: the person who committed the criminal act, or an aider and abettor.  Then they were told being an aider and abettor means both knowledge of the actual perpetrator's intent and the specific intent to assist in the crime.  They were instructed that both murder and attempted murder require intent to kill.  Finally, they were told they had to separately determine whether the actual perpetrator intended to kill each victim. Therefore, to convict Rodriguez under these instructions, the jury was required to determine whether he was the actual shooter, and if not, whether he shared the shooter's intent to kill each victim.  "[W]e presume a jury

---

[4]     Everything in the record suggests Rodriguez was the actual shooter in the attempted murder of Manzo.  For that additional reason, Rodriguez's argument does not apply to that conviction, which Rodriguez does not discuss in the argument sections of his briefing.

understands and follows the court's instructions." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205.)

Rodriguez cites *People v. Adams* (2008) 169 Cal.App.4th 1009 (*Adams*) for the proposition that a kill zone instruction is just another form of the natural and probable consequences doctrine. But that is not what *Adams* holds. *Adams* discussed a situation where a woman had set fire to the front and back entrances of a house, trying to kill one of the occupants, then argued she could not be convicted of attempted murder of the other occupants unless she knew each of them was there. (*Id.* at pp. 1019–1023.) Rejecting that argument, the panel explained that a kill zone theory enabled a jury to infer the defendant's intent from the "natural and probable consequence" of the defendant's own actions. (*Id.* at p. 1023.) *Adams* did not discuss aiding and abetting or any other form of accomplice liability.

In addition, Rodriguez relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), though he admits those cases do not involve "the same constellation of charges or instructions." The victim in *Langi* died when a blow to the face caused him to fall and hit his head. (*Langi, supra,* 73 Cal.App.5th at p. 976.) As phrased, the instructions permitted the jury to find the defendant guilty of murder if he aided and abetted the punch, regardless of whether he intended death to result. (See *id.* at pp. 980–981.) But the "central" instruction in *Langi*, CALJIC No. 8.31, which defined murder as a killing resulting from an "intentional act" with "natural consequences" that are "dangerous to human life," was not given here. (*Id.* at p. 981.)

In *Maldonado*, the victim was found stuffed in a storage locker with multiple stab wounds; the prosecution proceeded on the theory that the

9

defendant either killed the victim or helped someone else do it, and the murder was committed by lying in wait. (*Maldonado, supra,* 87 Cal.App.5th at pp. 1259–1260.) The jury was instructed that malice could be implied from the intentional commission of an act "the natural and probable consequences" of which were "dangerous to human life." (*Id.* at p. 1264.) They were also instructed that "lying in wait" simply meant hiding with an intent to make a surprise attack on the person killed. (*Ibid.*) The jury found the defendant guilty of murder, but found he was not guilty of lying in wait. (*Id.* at p. 1260.) This left open the possibility that the jury found the defendant had aided and abetted the actual perpetrator's lying in wait but had not intended the victim's death. (*Id.* at pp. 1265–1267.) Here, there is no issue of lying in wait, nor was there an instruction on implied malice.

In sum, the instructions told the jury to decide whether Rodriguez was the actual perpetrator or an aider and abettor. If he was an aider and abettor, they had to determine whether he knew about and shared the actual perpetrator's intent. Finally, they had to determine whether the actual perpetrator intended to kill each victim. This is not a situation where the jury had an option to find Rodriguez guilty without intent to kill, as in *Langi* and *Maldonado*. The jury was not instructed on implied malice, felony murder, or the natural and probable consequences doctrine. Nor is the kill zone instruction equivalent to a natural and probable consequences instruction.

Rodriguez was not convicted on a felony murder theory, under the natural and probable consequences doctrine, or under an implied malice theory. He is not eligible for relief under section 1172.6.

## DISPOSITION

The order of the trial court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


MORI, J.


DAUM, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article IV, section 6 of the California Constitution.